THIRD DIVISION
February 3, 2010

No. 1-08-3400

| | | |
|---|---|---|
| UHLICH CHILDREN'S ADVANTAGE NETWORK and DARLENE SOWELL, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiffs-Appellants, | ) ) | No. 08 CH 4394 |
| v. | ) ) | Honorable Rita M. Novak, Judge Presiding |
| NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, and AIG DOMESTIC CLAIMS, INC., | ) ) ) ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

Plaintiffs, Uhlich Children's Advantage Network (UCAN) and Darlene Sowell, filed a complaint for declaratory judgment seeking a determination of whether defendants, National Union Fire Insurance Co. of Pittsburgh and AIG Domestic Claims, had a duty to defend them in underlying litigation and alleging breach of contract and a violation of section 155 of the Insurance Code (215 ILCS 5/155 (West 2006)). The trial court dismissed plaintiffs' complaint on the basis that they failed to comply with the notice requirements of the policy. On appeal, plaintiffs argue that defendants had an obligation to provide coverage for both of them in the underlying suit.

## I.  BACKGROUND

### A.  Insurance Policies

AIG issued two insurance policies that insured UCAN and Sowell: one in effect from July 1, 2004, through July 1, 2005 (first policy), and another in effect from July 1, 2005, through July 1, 2006 (second policy).  Both policies, which were "claims first made and reported" policies, contained the following language:

"COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual during the Policy Period or the Discovery Period (if applicable) and reported to the insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization, except when and to the extent that the Organization has indemnified the Individual Insured.  The insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

\*\*\*

COVERAGE C: ORGANIZATION ENTITY COVERAGE

This policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable) and reported to the insurer pursuant to the terms

of this policy for any actual or alleged Wrongful Act of the Organization. The insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition."

"Individual insureds" include directors, officer, and employees of the organization. The policies define a "claim" as "a civil, criminal, regulatory, or administrative proceeding for monetary or non-monetary relief" that is commenced by service of a complaint or similar pleading, return of an indictment, or receipt of filing of a notice of charges. A "wrongful act" includes "any breach of duty, neglect, error, misstatement, misleading statement, omission or act." "Related wrongful acts" are "wrongful acts" that are "the same, related or continuous" or that "arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, insureds or legal causes of action." Clause 6 provides that a single retention amount or deductible "shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Acts."

Clause 8 of the policies provides that "[t]he Insurer does not assume any duty to defend. The insureds shall defend and contest any Claim made against them." It further provides that "[n]otwithstanding the foregoing, the Insureds shall have the right to tender the defense of any Claim to the Insurer, which right shall be exercised in writing by the Named Organization on behalf of all Insureds to the Insurer pursuant to Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy."

Clause 7 requires that notice to the insurer of a claim must be in writing. It further

1-08-3400

provides in relevant part:

"A claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Named Organization on behalf of any Insured or by the Insurer, whichever comes first.

(a) The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

(1) anytime during the Policy Year or during the Discovery Period (if applicable); or

(2) within 30 days after the end of the Policy Year or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an insured.

\*\*\*

(c) If during the Policy Period or during the Discovery Period (if applicable) the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons, and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related

-4-

to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given."

### B. Leonard Claim

On January 31, 2005, Andrew Leonard, a former UCAN employee, filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that UCAN discriminated against him in violation of the Americans With Disabilities Act of 1990 (ADA) (42 U.S.C. §12101 (2000)). He amended his charge on July 13, 2005.

Leonard received a right-to-sue letter in August 2005 with respect to the EEOC charge against UCAN. On September 29, 2005, Leonard filed a complaint in the United States District Court for the Northern District of Illinois against UCAN and Darlene Sowell, UCAN's then-executive vice-president of human resources. The federal complaint alleged that UCAN discriminated against him in violation of the ADA and that both UCAN and Sowell retaliated against him for exercising his rights under the Family and Medical Leave Act of 1993 (FMLA) (5 U.S.C. §6381 (2000)). UCAN received a copy of the complaint on October 10, 2005, and "notified AIG" of the complaint on the same day. AIG acknowledged receipt of the complaint on November 3, 2005, but on March 2, 2006, AIG stated that it would not provide coverage for Leonard's claims.

On February 4, 2008, UCAN filed a complaint seeking a declaration that defendants had a duty to defend them in the Leonard action and alleging breach of contract and a violation of section 155. Defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)), arguing that the Leonard claim was first made on

January 31, 2005, during the policy period of the first policy, but was not reported until the policy period for the second policy. Defendants argued that because both policies provided that only a claim made and reported during the first policy period was covered, the complaint should be dismissed. The trial court dismissed the complaint, and this appeal followed.

## II.  ANALYSIS

A motion to dismiss pursuant to section 2-615 attacks the legal sufficiency of the complaint. *R & B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 920 (2005). A court reviewing an order granting a section 2-615 motion takes all well-pled facts as true. *R & B*, 358 Ill. App. 3d at 920. On review of a section 2-615 dismissal, the court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted. *R & B*, 358 Ill. App. 3d at 920. A dismissal pursuant to section 2-615 is reviewed *de novo*. *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 815 (2003).

## A.  Estoppel

A court's primary objective in construing the language of an insurance contract is to ascertain and give effect to the intent of the parties to the contract. *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 389 (2006). Courts should construe an insurance policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the terms of the policy are clear and unambiguous, they

must be given their plain and ordinary meaning. *Pasalka*, 363 Ill. App. 3d at 389. Conversely, if the language in the policy is susceptible to more than one meaning, it is ambiguous and will be construed strictly against the insurer. *Pasalka*, 363 Ill. App. 3d at 389. Courts should not strain to find ambiguity in an insurance policy where none exists. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

Claims-made and occurrence-based insurance policies insure different risks. " 'In the occurrence policy, the risk is the occurrence itself. In the claims made policy, the risk insured is the claim brought by a third party against the insured.' " *Continental Casualty Co. v. Coregis Insurance Co.*, 316 Ill. App. 3d 1052, 1062 (2000), quoting *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514 (1995).

> "Conventional liability insurance policies are 'occurrence' policies; they insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured. Because of the indefinite future liability to which an occurrence policy exposes the insurance company, these companies now offer (also or instead) 'claims made' policies, which limit coverage to claims made during the policy period. The coverage is less, but so, therefore, is the cost." *National Union Fire Insurance Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993).

The purpose of a claims-made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums

with greater certainty. *Aetna Casualty & Surety Co. of Illinois v. Allsteel, Inc.*, 304 Ill. App. 3d 34, 40 (1999). A "claims made and reported" policy requires not only that the claim be first made during the policy period, but also that it be reported to the insurer during the policy period. *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1083 (7th Cir. 2007). See also *Graman v. Continental Casualty Co.*, 87 Ill. App. 3d 896, 899 (1980).

Plaintiffs argue that defendants owed both UCAN and Sowell a duty to defend because the Leonard lawsuit falls within the coverage provided by the policies. Plaintiffs further argue that because defendants breached their duty to defend, the estoppel doctrine precludes them from asserting their policy-based "late notice" defenses.

The general rule of estoppel provides that an insurer that takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). "Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Ehlco*, 186 Ill. 2d at 150-51. Because the estoppel doctrine applies only where an insurer has breached its duty to defend, a court first "inquires whether the insurer had a duty to defend and whether it breached that duty." *Ehlco*, 186 Ill. 2d at 151.

An insurer's duty to defend, which is much broader than its duty to indemnify, is generally determined by comparing the allegation of the underlying complaint against the insured

to the language of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992); *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 970 (2003). In determining whether an insurer owes its insured a duty to defend, the court must look to the allegations of the underlying complaint in comparison to the relevant insurance policy provisions. *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 500 (1998). If the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent. *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 970 (2003). Because the insurer's duty to defend is broader than the duty to indemnify, it may be obligated to defend against causes of action and theories of recovery that are not in fact covered by the policy. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 162 (1988).

### 1. Darlene Sowell

We find that defendants had a duty to defend Sowell in the federal case brought by Leonard. As an officer of the organization, Sowell was an "individual insured" under the policies at issue in this case. Defendants argue that, similar to UCAN, Sowell was on notice that she was likely to be sued when Leonard filed his amended EEOC charge. We note that the EEOC amendment was made early during the second policy period and that Sowell gave defendants notice of the claim later in the second policy period. Both the amendment and notice occurred during the second policy period.

Furthermore, neither the original EEOC charge nor the amended charge made a claim

against Sowell for wrongful acts. While defendants argue that the amended charge's mention of the "Human Resources Vice President" put Sowell on notice, the EEOC charge alleging an ADA violation could not have made such a claim against her, as ADA claims may not be brought against officers of a corporation. See *Albra v. Advan, Inc.*, 490 F.3d 826, 830, 834 (11th Cir. 2007), citing 42 U.S.C. §§12111(2), 12112(a) (2006). Because the claim against Sowell was "first made" during the second policy period, when the federal lawsuit was filed, and UCAN provided defendants notice the same day, also during the second policy period, the claim against Sowell was covered by the second policy.

Defendants cite *American Center for International Labor Solidarity v. Federal Insurance Co.*, 518 F. Supp. 2d 163 (D.D.C. 2007), for the idea that the failure to report a claim for a wrongful act bars coverage for related wrongful acts; thus, according to defendants, UCAN's failure to report the EEOC charge during the first policy period precludes coverage of Leonard's federal lawsuit against Sowell. In *American Center for International Labor Solidarity*, the insured received notice in August 2002 that a former employee filed a charge of discrimination. The employee filed a second notice of charge in November 2002; the EEOC issued a right-to-sue letter in September 2003; and in December 2003, the employee filed a lawsuit in federal court against his former employer and its executive director. The former employer first notified its insurance company of the claims of discrimination on January 20, 2004. The district court rejected the employer's argument that the insurer was obligated to cover the defense and settlement costs associated with the lawsuit as it pertained to the executive director, since he was not identified as a party to the EEOC charge of discrimination but was named in the lawsuit that

the employee filed in federal court.

The court found that the insurance company was not obligated to provide coverage for the executive director. *American Center for International Labor Solidarity*, 518 F. Supp. 2d at 174. The policy in that case specified that all " 'Interrelated Wrongful Acts of any Insured shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Year in which a Claim is first made against any Insured.' " *American Center for International Labor Solidarity*, 518 F. Supp. 2d at 174. The policy defined " 'Interrelated Wrongful Acts' " as all " 'causally connected Wrongful Acts.' " *American Center for International Labor Solidarity*, 518 F. Supp. 2d at 174. Because the EEOC charge and the lawsuit "arise out of the same causally connected facts," "there is only a single loss to be claimed under the Policy, and not a separate 'claim' as to [the executive director] individually." *American Center for International Labor Solidarity*, 518 F. Supp. 2d at 174.

The pivotal difference between *American Center for International Labor Solidarity* and this case is that the definition of "claim" in defendants' policies does not state that all suits or proceedings arising out of the same facts are a single "claim." Indeed, there is *no* language in the policies overtly establishing that related wrongful acts constitute one loss, unlike the provision in *American Center for International Labor Solidarity*, 518 F. Supp. 2d at 174, providing that all " 'Interrelated Wrongful Acts of any Insured shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Year in which a Claim is first made against any Insured.' " See *Lodgenet Entertainment Corp. v. American International Specialty Lines Insurance Co.*, 299 F. Supp. 2d 987 (D.S.D. 2003). Defendants want the instant policies to say

that related wrongful acts constitute a single claim, but they simply do not. "An agreement reduced to writing must be presumed to reflect the intention of the parties who signed it." *Central Illinois Public Service Co. v. American Surplus Lines Insurance Co.*, 267 Ill. App. 3d 1043, 1048 (1994).

## 2. Uhlich Children's Advantage Network

Plaintiffs argue that because defendants had a duty to defend Sowell, they also had a duty to defend UCAN, relying on *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1011 (2000) (holding in the context of an occurrence policy that an "insurer's duty to defend extends to cases where the complaint contains several theories or causes of action against the insured and only one of the theories is within the policy's coverage and the others may not be"). We disagree. In *Williams v. American Country Insurance Co.*, 359 Ill. App. 3d 128, 139 (2005), we found that the policy language "allows coverage to be excluded as to one insured and remain in effect as to the other insured." Had defendants not been estopped under *Ehlco*, as we discuss below, they would have been permitted to represent Sowell only.

Defendants, citing *Graman*, contend that "an additional element" must be considered in determining whether a claim is potentially covered under a "claims made and reported policy," *i.e.*, whether the claim was actually first made and reported as required by the policy. In *Graman*, the defendant insurance company sold the plaintiff, an architect, a claims-made policy, which required any claim against the plaintiff to be made during the period of the policy and be reported to the insurer no later than 60 days after the end of the policy period. The plaintiff performed work on a new school building, but in September 1973, the school notified him of

problems with the roof. For four years, the plaintiff, contractor, and school district unsuccessfully attempted to rectify the problem, and in October 1977, the school district filed a lawsuit against the plaintiff. The plaintiff tendered the defense of the suit to the defendant, which denied coverage, and the plaintiff filed a complaint for declaratory judgment. On appeal, the court noted that the claims-made policy is characterized by coverage for acts discovered during and brought to the attention of the insurer during the policy term. *Graman*, 87 Ill. App. 3d at 899. It concluded that "[i]t would appear that plaintiff is foreclosed from pressing his claim" that the insurer owes him coverage, since the lawsuit "was not filed and [the insurer] did not receive notification thereof until more than three years after the effective cancellation date." *Graman*, 87 Ill. App. 3d at 900.

The plaintiff argued, however, that there was a potential for coverage under the policy, and since the defendant failed to defend it under a reservation of rights or to file a declaratory judgment action, it was estopped from denying liability under the policy. The court disagreed, finding that the time qualifications "control the coverage provision" and related "directly to the coverage afforded under the policy." *Graman*, 87 Ill. App. 3d at 901, 902. The court continued:

"Plaintiff would excise the time clause from the contract, thereby allowing any
insured who once owned such a policy to assert coverage no matter when it
notified the insurer of such a claim. However, we do not believe the allegation of
a situation which technically falls under the error, omission, or negligent act
definition of coverage is all that is needed to show potentiality of coverage under
the policy at issue here. The insured must notify the insurer of such a claim

-13-

within the time constraints listed in the policy or there is no coverage for the acts, omissions or negligent acts of the insured, no matter when they occurred."

*Graman*, 87 Ill. App. 3d at 902.

Because the plaintiff did not present the claim to the insurer within 60 days after the expiration of the policy, no potential coverage existed. *Graman*, 87 Ill. App. 3d at 902.

Citing *Graman*, defendants argue that under a "claims first made and reported" policy, failure to timely notify the insurer is a condition precedent to coverage. However, *Ehlco*, decided 19 years after *Graman*, expressly rejected this argument:

"The decisions recognizing an exception for late-notice defenses reason that an insured's compliance with a notice provision in a liability insurance policy is a condition precedent to coverage. As a result, where the insured breaches the notice provision, that breach negates any duty to defend or indemnify on the insurer's part. Furthermore, because the duty to defend has been negated, the general rule estopping the insurer from denying coverage where it breaches the duty to defend does not apply. *** We are not persuaded by this argument. To accept it would be to contradict long established law governing the insurers' duty to defend and the consequences of breaching that duty." *Ehlco*, 186 Ill. 2d at 152-53.

*Ehlco* concluded that "there is no exception to the estoppel doctrine for late-notice defenses" and held that "[i]f an insurer believes that it received notice too late to trigger its obligations, it should defend its insured under a reservation of rights or litigate the matter in a

declaratory judgment action." *Ehlco*, 186 Ill. 2d at 154. Defendants argue that the holding in *Ehlco* applies only to occurrence-based policies and therefore we should not hold that "claims first made and reported" policies are subject to the estoppel doctrine. There is nothing in *Ehlco* limiting the estoppel doctrine to occurrence-based policies. Indeed, *Ehlco* noted that, to the extent that decisions recognizing an exception to the estoppel doctrine for late-notice defenses "conflict with our holding, they are hereby overruled." *Ehlco*, 186 Ill. 2d at 154.

We agree with defendants' argument that there are some instances in which an insurance company may decline to defend an entity that claims to be an insured. In *United Stationers Supply Co. v. Zurich American Insurance Co.*, 386 Ill. App. 3d 88 (2008), the plaintiff, like plaintiffs in the instant case, filed a declaratory judgment action alleging that the insurer breached its duty to defend it in an underlying action and, thus, was estopped from raising policy defenses. We concluded that the plaintiff in *United Stationers* was not an additional insured under the policy, and in light of that finding, we did not reach the other issues raised by the plaintiff, including the question of whether the insurer was estopped from raising policy defenses. *United Stationers*, 386 Ill. App. 3d at 105-06. Implicit in our ruling was that before a court applies the estoppel doctrine as elucidated in *Ehlco*, the purported insured must actually be an insured. In the instant case, both plaintiffs were "insureds" of defendants under the language of the policy at issue.

Defendants correctly note that UCAN did not give them timely notice, as it received notice of the EEOC charge during the first policy period but did not give defendants notice until the second policy period, when Leonard filed his lawsuit in federal court. See *Baker &*

1-08-3400

*McKenzie*, 997 F.2d at 308, 309; *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340, 349 (1999) ("Coverage under plaintiff's claims-made policy is triggered when two events occur: (1) the claim must be made during the policy period, *and* (2) the claim must be reported during the policy period. Unless the two conditions occur, no coverage is provided under the claims-made policy" (emphasis in original)).

However, once the insurer breaches its duty to defend, the estoppel doctrine "has broad application and operates to bar the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend." *Ehlco*, 186 Ill. 2d at 152. Accordingly, but for *Ehlco*, defendants would not have had a duty to defend UCAN. However, there is no question that the first policy was in effect when UCAN received notice of the EEOC charge and the second policy was in effect when Leonard filed his lawsuit and UCAN notified defendants of the lawsuit. Consequently, *Ehlco* required defendants to either represent plaintiffs under a reservation of rights or file a declaratory action. *Ehlco*, 186 Ill. 2d at 154.

Defendants further contend that they did not assume a duty to defend under the policies. Defendants argue that the duty to defend is a creature of contract (*Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 394 (1982)), and the policies specifically provide, "The Insurer does not assume any duty to defend. The insureds shall defend and contest any Claim made against them." Defendants recognize that the policies go on to say:

> "[T]he Insureds shall have the right to tender the defense of any Claim to
> the Insurer, which right shall be exercised in writing ***. This right shall

-16-

terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy. *** Provided the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim even if such Claim is groundless, false or fraudulent."

Defendants contend that the complaint does not allege, and there is no evidence in the record suggesting, that UCAN tendered the defense *in writing*. We note, however, that plaintiffs forwarded the federal Leonard complaint to defendants on October 10, 2005, the same day they received it. AIG also admitted in its March 2, 2006, letter, that "this Claim was reported to AIGDC on October 10, 2005." We conclude that plaintiffs' action in sending a copy of the complaint to defendants complied with the requirements of *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 328 (1998), which held that actual notice of a claim triggers the insurer's duty to defend.

Defendants argue that estoppel should not apply in this case for the additional reason that they actively sought a judicial determination of their rights and duties after plaintiffs filed their complaint for declaratory relief. Defendants cite *Village of Melrose Park v. Nautilus Insurance Co.*, 214 Ill. App. 3d 864, 867 (1991). In *Village of Melrose Park*, the court held that the insurer's failure to bring the declaratory action was irrelevant, since it "sought, through a motion for summary judgment, an adjudication of its rights and duties." *Village of Melrose Park*, 214 Ill. App. 3d at 867. See also *Waitzman v. Classic Syndicate, Inc.*, 271 Ill. App. 3d 246 (1995) (insurer filed a motion for summary judgment seeking an adjudication of its rights under the policy); but see *County of Massac County v. United States Fidelity & Guaranty Co.*, 113 Ill. App.

1-08-3400

3d 35 (1983) (finding insurer estopped where it responded to the insured's declaratory judgment action by filing a motion to dismiss). Here, the insureds filed a complaint for declaratory judgment two years after defendants denied their claim.

> "While there need not be a race to the courthouse and the insured should not be able to estop the insurer from asserting policy defenses by filing a complaint for declaratory judgment first, the insurer must take some action to adjudicate the issue of coverage or undertake to defend the insured under a reservation of rights, and it must take that action within a reasonable time of a demand by the insured." *Korte Construction Co. v. American States Insurance*, 322 Ill. App. 3d 451, 458 (2001).

Forcing the insureds to file a declaratory action two years after defendants denied their claim did not constitute "a reasonable time of a demand by the insured." *Korte Construction Co.*, 322 Ill. App. 3d at 458.

Accordingly, we conclude that because defendants failed to either represent plaintiffs under a reservation of rights or file a declaratory action, they are estopped from asserting their late-notice defense. *Ehlco*, 186 Ill. 2d at 154. Consequently, defendants have a duty to defend UCAN.

### B.  Section 155 Claim

Plaintiffs next argue that the trial court erred in dismissing their count based on vexatious refusal to settle under section 155 of the Insurance Code (215 ILCS 5/155 (West 2006)).  Section 155 of the Insurance Code provides that an insurer is liable for certain penalties when "there is in

issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155 (West 2006). Section 155 was enacted by the legislature to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits. *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 680-81 (2000). "The attorney fees, costs, and limited penalty provisions of section 155 are an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct." *McGee*, 315 Ill. App. 3d at 681.

The "key question" in a section 155 claim is whether an insurer's conduct is vexatious and unreasonable. *McGee*, 315 Ill. App. 3d at 681. An insurance company does not violate section 155 merely by unsuccessfully litigating a dispute. *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587, 591 (1995). In addition, section 155 does not create a duty to settle, and a delay in settling a claim does not violate the statute if the delay results from a *bona fide* dispute concerning coverage. *McGee*, 315 Ill. App. 3d at 681. "However, an insurer's conduct may be vexatious and unreasonable if the insurer refuses to settle and proceeds to arbitration or trial without presenting a *bona fide* defense." *McGee*, 315 Ill. App. 3d at 681.

Plaintiff argues that "AIG's refusal to cover the Leonard claims when examined in light of AIG's undisputed 'actual notice' of the claim against UCAN and Sowell may be sufficient evidence" from which a trier of fact could find vexatious behavior on the part of both defendants. Plaintiffs further contend that they made clear their disagreement with defendants' decision to

1-08-3400

deny coverage, and they invited defendants to participate in early efforts to settle the Leonard claim.

"An insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sections where a *bona fide* dispute over coverage exists." *Baxter International, Inc. v. American Guarantee & Liability Insurance Co.*, 369 Ill. App. 3d 700, 710 (2006); *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151 (2004). We conclude that section 155 damages are not appropriate, as there was a genuine dispute regarding coverage.

### III. CONCLUSION

For the foregoing reasons, we reverse the dismissal of plaintiffs' declaratory action but affirm the dismissal of their claim based on section 155.

Affirmed in part and reversed in part; cause remanded.

QUINN and STEELE, JJ., concur.

1-08-3400

| | |
|---|---|
| Please Use Following Form: | |
| Complete TITLE of Case | UHLICH CHILDREN'S ADVANTAGE NETWORK and DARLENE SOWELL,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, and AIG DOMESTIC CLAIMS. INC.,<br><br>Defendants-Appellees. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-08-3400<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>February 3, 2010<br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE MURPHY delivered the opinion of the court:<br><br>Quinn and Steele, JJ., concur [s] |
| APPEAL from the Circuit Ct. of Cook County, Criminal Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable Rita M. Novak , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br><br><br><br><br><br><br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for **Plaintiffs-Appellants:** James T. Derico, Jr. & Mary K. Schulz, of counsel<br>Derico & Associates, P.C.<br>77 W. Washington Street, Suite 500<br>Chicago, IL 60602<br>Phone: (312) 553-9253<br><br>Attorneys for **Defendant-Appellee**: Zacarias R. Chacon, Leena Soni<br>Lewis Brisbois Bisgaard & Smith LLP<br>550 W. Adams Street, Suite 300<br>Chciago, IL 60661<br>Phone: (312) 345-1718 |