CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee, v. ANTHONY CUDA, Defendant-Appellant (James T. Bielarz *et al.*, Defendants).

First District (1st Division)   No. 1—97—4096

Opinion filed July 12, 1999.

Carrie M. Foris, of Chicago, for appellant.

Haskell & Perrin, of Chicago (John J. Lynch and Robert W. Brunner, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Continental Casualty Company (plaintiff), a legal malpractice insurer, sought declaratory judgment that there was no duty to defend or indemnify Anthony Cuda (defendant) in a professional malpractice action. The circuit court of Cook County granted plaintiff's motion for judgment on the pleadings as to count I of its complaint pursuant to section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (West 1998)). Notice of appeal was timely filed on October 31, 1997. We affirm.

James T. Bielarz was the president and sole shareholder of his own automotive repair business called Nortown Automotive Repair Service, Incorporated (Nortown). In early 1990, Bielarz decided it was necessary to purchase additional real property because Nortown's automotive repair business was expanding and required additional space to service its customers.

In February 1990, Bielarz contacted defendant and engaged him to do the legal work in connection with any future purchase of property at 1400 West North Avenue in Chicago, Illinois. Bielarz also contacted Nicholas Cuda, defendant's brother, for tax advice as to whether Bielarz, or his corporation, Nortown, should act as the purchaser of the property. Also in February 1990, Bielarz asked defendant and Nicholas whether they would be interested in purchasing the property with him. A total of approximately $250,000 was required as equity for the purchase of the property. In April 1990, defendant and Nicholas suggested to Bielarz that the three of them enter into a partnership with respect to the income earned and expenses incurred in connection with the operation and management of the property. The three agreed that the income earned in connection with the operation and management of the property would be allocated 50% to Bielarz, 25% to defendant and 25% to Nicholas. In May 1990, a partnership was formed entitled Clybourn Square Properties. Defendant and Nicholas agreed with Bielarz that no written partnership agreement would be prepared or executed.

Bielarz advanced $100,000 toward the purchase of the property and the balance was provided from a prepayment of one of the

property's current tenants, Metrocom Communications, Inc. (Metrocom), which had recently been acquired by Ameritech. The prepayment was the balance of Metrocom's rent under a three-year lease executed in May 1990, for the north half of the first floor of the property. This lease was negotiated by defendant and Nicholas. On May 24, 1990, the three purchased the property and transferred the title into a land trust held by La Salle National Bank. Under the trust agreement, Bielarz held a 50% beneficial interest in the assets of the trust, defendant held a 25% beneficial interest, and Nicholas held a 25% beneficial interest. After the closing, defendant and Nicholas each provided $25,000 to the partnership.

In 1993, Bielarz became dissatisfied with the terms of the partnership and sought to dissolve the partnership and seek damages from defendant and his brother. Bielarz was concerned about the change in the allocation of income—he was not receiving any income from the newly negotiated Metrocom lease. On September 15, 1995, Bielarz filed a complaint for injunctive relief against defendant and his brother in the chancery division of the circuit court of Cook County which remains pending at the time of this appeal.

Bielarz's complaint consisted of three counts against defendant and Nicholas. Count I sought an accounting of the partnership, count II sought a dissolution of the partnership, and count III sought damages for breach of various fiduciary duties alleged to have been owed by both defendant and his brother to Bielarz. Relevant allegations of the complaint include:

"27. At all relevant times, [defendant] was the attorney for the [sic] Bielarz, Nortown and the partnership.

28. As attorney for the [sic] Bielarz, [defendant] had continuing affirmative duty to Bielarz, his client and partner, to inform him as to any possible conflicts of interest."

Upon receipt of the complaint and summons, defendant retained counsel, who filed an appearance and jury demand on October 24, 1995. On May 3, 1996, defendant and his brother filed a verified counterclaim against Bielarz also seeking damages for breach of fiduciary duty, breach of the Illinois Joint Tenancy Act (765 ILCS 1005/0.01 et seq. (West 1996)) and seeking declaratory judgment in their favor. In addition, defendant and his brother filed a third-party complaint against Nortown which included similar allegations.

On September 25, 1996, Bielarz filed a verified first amended complaint which consisted of six counts. Count I alleged breach of contract against defendant and his brother in their capacity as partners. Count II alleged breach of fiduciary duties against defendant and his brother in their capacity as partners. Count III alleged breach of fiduciary

duty against defendant only in his capacity as Bielarz's attorney. This count also included allegations that defendant violated various provisions of the Illinois Rules of Professional Conduct in failing to disclose to Bielarz a conflict concerning defendant's representation of him in connection with the partnership. Count IV involved defendant's brother, and counts V and VI sought an accounting and dissolution of the partnership, respectively.

Nortown filed a counterclaim against defendant on September 25, 1996. The counterclaim consisted of a single count against defendant alleging a breach of fiduciary duty to Nortown in his capacity as Nortown's attorney and violations of the Illinois Rules of Professional Conduct.

Defendant was a named insured under two consecutive professional liability policies issued by plaintiff to defendant's firm, Cuda & LaPonte, Ltd. The first policy was a claims-made policy with a coverage period of December 17, 1994, through December 17, 1995 (first policy). The second policy was identical in form to the first policy with a coverage period of December 17, 1995, through December 17, 1996 (second policy).

The relevant terms of the policies stated:

"Your professional liability insurance is written on a 'claims-made' basis and only applies to those claims first made against you while this insurance is in force. No coverage exists for claims first made against you after the end of the policy term unless and to the extent an extension of coverage applies."

Under "coverage agreements," the policy states:

"A. We will pay all amounts, up to our limit of liability, which you become obligated to pay as a result of a wrongful act by you or any entity for whom you are legally liable.

B. The wrongful act, as described above, must happen before the end of the policy term stated on the Declarations and the claim therefore must first be made against you and reported to us during that policy term. Any claim or claims arising out of the same or related wrongful acts, shall be considered first made during the policy term in which the earliest claim arising out of such wrongful acts was made.

C. We have the right and will defend any claim. We will do this even if the charges of the claim are groundless, false, or fraudulent.

D. We have no duty to defend any claim not covered by this Coverage part."

The policy also contained the following relevant definitions:

"'Claim' means the receipt of a demand for money or services, naming you and alleging a 'wrongful act.'

'Wrongful Act' means any negligent act, error or omission in

A. the rendering or failure to render professional services."

On October 4, 1996, defendant notified plaintiff of the Bielarz and Nortown claims. Plaintiff denied coverage to defendant by correspondence dated November 18, 1996. On February 13, 1997, plaintiff filed a complaint for declaratory action against defendant, Bielarz and Nortown.

Under count I, plaintiff alleged that the complaint filed by Bielarz on September 15, 1995, constituted a claim as defined by the terms of that policy. According to the policy, defendant was required to report the claim to plaintiff within the *same policy period*. Because defendant failed to report the September 15, 1995, complaint until October 4, 1996, plaintiff alleged the complaint was not a claim made and reported within the same policy period. Consequently, plaintiff alleged it was relieved from defending and indemnifying defendant against the Bielarz claim.

Moreover, plaintiff alleged that the Nortown counterclaim contained substantially the same allegations as those set forth in Bielarz's amended complaint and arose from the same or related acts which were alleged in Bielarz's original complaint. To that end, plaintiff argued that the Nortown counterclaim was also a noncovered claim first made on September 15, 1995. Thus, plaintiff claims it has no duty to defend or indemnify defendant in connection with both Bielarz's amended complaint and the Nortown counterclaim.

On May 5, 1997, defendant filed an answer, affirmative defenses and a counterclaim against plaintiff. The affirmative defenses to count I of plaintiff's complaint included:

"1. The specific allegations pled by Bielarz in his initial verified complaint do not allege a 'wrongful act' on the part of [defendant], such as would constitute a claim under the terms of [plaintiff's] Policy No. LPC 3022018, and therefore, the grounds asserted in count I of [plaintiff's] complaint for denial of coverage are unfound [*sic*] and improper.

2. Alternatively, the specific allegations pled by Bielarz in his initial verified complaint are not sufficient to have put [defendant] on notice that he was being charged with a 'wrongful act' that should have been reported to [plaintiff] under Policy No. LPC 3022018, or any predecessor policy.

3. Alternatively, even if the allegations pled by Bielarz in his initial verified complaint may be deemed sufficient to have advised [defendant] that he was being charged with a 'wrongful act' which should have been reported to [plaintiff], there existed a valid and enforceable contract for Lawyers' Professional Liability between [defendant] and [plaintiff] on September 15, 1995, and while the subject claim may not fall within the policy term of Policy No.

3022018, it does fall within the term of the predecessor policy. As of the filing of the instant affirmative defenses, [defendant] has not been able to locate a copy of the predecessor policy in question."

Defendant also filed a counterclaim alleging bad faith on the part of plaintiff and demanding declarative relief and attorney fees and costs.

Plaintiff filed its answer to defendant's affirmative defenses and counterclaim. Plaintiff denied the allegations contained in paragraphs 1 and 2 of count I of defendant's affirmative defenses. Plaintiff responded to the third paragraph of count I:

"3. [Plaintiff] admits that there existed a valid and enforceable contract for lawyers' professional liability insurance between [defendant] and [plaintiff] on September 15, 1995, but [plaintiff] denies that the claim filed by Bielarz on September 15, 1995, falls within that policy term, and in further answering, [plaintiff] denies each and every other allegation or legal conclusion of Paragraph 3."

On July 11, 1997, plaintiff filed a motion for judgment on count I of its complaint for declaratory judgment pursuant to section 2—615(e) (735 ILCS 5/2—615(e) (West 1998)). On September 12, 1997, defendant filed a response to plaintiff's motion and a cross-motion for judgment on the pleadings. Defendant's cross-motion was later withdrawn, which was acknowledged by the trial court during oral argument of the motion.

The court found in favor of plaintiff and entered judgment in its favor on count I of the complaint. The court also found that "entry of judgment on count I renders all other issues in this case moot." Defendant timely filed his notice of appeal on October 31, 1997.

On appeal, defendant alleges the trial court erred in granting plaintiff's motion for judgment on the pleadings against defendant as to count I of its complaint. Defendant alleges the pleadings raised disputed issues of material fact and that plaintiff failed to demonstrate any prejudice suffered as a result of defendant's late notice of the complaint filed against him.

■ According to the Illinois Code of Civil Procedure, "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2—615(e) (West 1998). The purpose of a motion for judgment on the pleadings is to test the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by its complaint. *Millers Mutual Insurance Ass'n v. Graham Oil Co.*, 282 Ill. App. 3d 129, 134 (1996). Alternatively, the purpose of the motion is to determine whether defendant by his answer has set up a defense that would entitle him to a hearing on the merits. *Millers Mutual Insurance Ass'n*, 282 Ill. App. 3d at 134.

In ruling on a motion for judgment on the pleadings, a trial court may review only the pleadings filed by the parties. *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 748 (1993). "[I]f the pleadings put in issue one or more material facts, evidence must be taken to resolve such issues" and judgment may not be entered on the pleadings. *In re Estate of Davis*, 225 Ill. App. 3d 998, 1000 (1992). Moreover, a denial of an allegation in an answer or an affirmative defense will preclude judgment on the pleadings when denial raises issues of material fact. *In re Marriage of O'Brien*, 247 Ill. App. 3d at 748. Therefore, we must determine whether defendant's affirmative defenses to count I raise significant issues of material fact that should have been resolved by the trial court prior to disposing of the case at bar. The appropriate standard of review is *de novo*. *Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.*, 287 Ill. App. 3d 741 (1997).

First, in response to plaintiff's allegation that defendant failed to report the Bielarz claim within the appropriate policy period, defendant contends that the lawsuit filed on September 15, 1995, was not a "claim" as defined by defendant's professional liability policy. Defendant claims the language in Bielarz's complaint indicates that the alleged breach of fiduciary duty stemmed from defendant's actions or omissions as a *partner*, not from any negligent act or omission committed by defendant in his capacity as an attorney. Specifically, defendant points to the following paragraphs in the original complaint:

"57. [Defendant] owed Bielarz, as his attorney, fiduciary duty to disclose any actual or potential conflicts of interest and to withdraw from representation if any such conflicts arose.

58. *In 1993, a conflict between [defendant] and Bielarz arose because Bielarz had a financial interest in maintaining the status quo regarding the division of the net income of the Partnership among the three partners, and [defendant] had a financial interest in effectuating a change in the division of the net income of the Partnership.*

59. [Defendant] failed to inform Bielarz of this conflict. He further failed to withdraw from his representation of Bielarz during this period. This constitutes a breach of his fiduciary duty." (Emphasis added.)

██ █ It is well-established law that, in determining whether an insurer has a duty to defend its insured, the court must look to "the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). We agree with the trial court, which found that defendant "was on notice that his professional life was in jeopardy, based on this original complaint." The trial court stated:

"They're saying [defendant] owed Bielarz as his attorney, a fiduciary duty to disclose any action or potential conflicts of interest and to withdraw from representation if any such conflicts arose. Now, that's an allegation of a wrongful act in the rendering of or the failure to render professional services, because it ties it to him as an attorney. I would agree with you had they not put in that clause, 'as his attorney,' then I would say then this is just three partners squabbling. *** But here he put him on the spot with that language in paragraph 56 that as his attorney, you know, he had this duty to disclose conflicts and to withdraw from representation if any conflicts arose. And he alleges there's a conflict in paragraph 57. So I can't get around that as not being a claim."

Furthermore, we recognize that the language in the complaint, specifically the "duty to disclose any actual or potential conflicts of interest and to withdraw from representation if any such conflicts arose," refers to the Rules of Professional Conduct governing attorney conduct. For instance, Rule 1.8(a) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.8(a)) states:

"(a) Unless the client has consented after disclosure, a lawyer shall not enter into a business transaction with a client if:

(1) the lawyer knows or reasonably should know that the lawyer and the client have or may have conflicting interests therein; or

(2) the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client."

Also, Rule 1.7(b) provides as follows:

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after disclosure." 134 Ill. 2d R. 1.7(b).

Thus, because of the language embraced in Bielarz's complaint filed on September 15, 1995, we conclude that Bielarz's complaint referred to defendant in his capacity as Bielarz's attorney.

■ Defendant contends that even though the September 15, 1995, complaint may have referred to defendant in his capacity as Bielarz's attorney, the complaint contained no allegations that defendant performed any "professional services" for or on behalf of Bielarz. The term "professional services" in the context of a professional liability policy refers to the practice of law. *Regas v. Continental Casualty Co.*, 139 Ill. App. 3d 45, 51 (1985). Our supreme court has described the practice of law as:

"[T]he giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill." *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 51 (1949).

■ Indeed, to allege a wrongful act under this professional liability policy, a party must assert a "negligent act, error or omission in the rendering or failure to render professional services." Here, the omission complained of was that defendant failed to inform Bielarz of the conflict of interest involved with defendant acting as the attorney for Bielarz, the attorney for Nortown, attorney for the partnership, and as a partner in the partnership. To that end, the trial court noted that when paragraphs 28 and 56 of the September 15, 1995, complaint are considered together, they allege defendant owed Bielarz, as his attorney, a fiduciary duty to disclose any actual or potential conflicts of interest and to withdraw from representation if any such conflicts arose. Thus, the plain language of plaintiff's policy defining "claim" and "wrongful act," as well as the clear allegations of the Bielarz complaint, demonstrates that the Bielarz lawsuit was a claim that alleged wrongful acts in the performance of professional services.

There was no need for additional discovery to determine whether defendant should have been alerted that he was being sued in his capacity as an attorney. We conclude that the complaint was clear and unambiguous in its allegations against defendant in his role as an attorney. Furthermore, since we conclude that the September 15, 1995, complaint was a "claim" as defined under the policy, we need not consider defendant's argument that Bielarz's claim was really first made on September 25, 1996, when the amended complaint was filed.

Next, assuming *arguendo*, that the September 15, 1995, complaint was a claim, defendant proceeds to argue that it was nevertheless covered by the policy in effect from December 17, 1994, to December 17, 1995. Defendant cites *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278 (1974), to support his contention that he timely notified plaintiff of the claim pursuant to the terms of the professional liability policy. However, the insurance policy in *Barrington* was an occurrence policy which provides continuing coverage after the policy period expires.

■ The professional liability policy in this case was a claims-made policy. Coverage under plaintiff's claims-made policy is triggered when two events occur: (1) the claim must be made during the policy period, *and* (2) the claim must be reported during the policy period. Unless these two conditions occur, no coverage is provided under the claims-made policy.

While the Bielarz claim was first made on September 15, 1995, and defendant had purchased a professional liability policy covering this period (first policy), it is undisputed that defendant failed to notify plaintiff during this corresponding policy period. By arguing that the Bielarz complaint filed during the first policy period, and reported to plaintiff during the second policy period on October 4, 1996, should be covered by the first policy, defendant is in effect attempting to turn a claims-made policy into an occurrence policy. Defendant failed to notify plaintiff of the claim during the corresponding first policy period under a claims-made policy. Therefore, his policy was not triggered and he is barred from benefitting from plaintiff's services.

■ Finally, defendant contends that even if this court deems his notice to plaintiff was unreasonable as a matter of law, plaintiff failed to demonstrate it was prejudiced by defendant's alleged omission or delay. However, where the giving of notice is a condition precedent to a right of action against the insurance company, the prejudice resulting from the delay in giving notice is deemed immaterial. *University of Illinois v. Continental Casualty Co.*, 234 Ill. App. 3d 340, 365 (1992). Since defendant failed to give notice of a claim during the policy period, which was a condition precedent to receiving coverage, the issue of prejudice is irrelevant.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'BRIEN, P.J., and TULLY, J., concur.