# Illinois Official Reports

## Appellate Court

---

*Southwest Disabilities Services & Support v. ProAssurance Specialty Insurance Co.*,
2018 IL App (1st) 171670

---

| | |
|---|---|
| Appellate Court Caption | SOUTHWEST DISABILITIES SERVICES AND SUPPORT, REUBEN GOODWIN, and KIMBERLY GOODWIN, Plaintiffs-Appellants, v. PROASSURANCE SPECIALTY INSURANCE COMPANY, INC., Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-1670 |
| Filed | July 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-11078; the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kelly & Bracey Law Offices, of Chicago (Michael G. Kelly, of counsel), for appellants.<br><br>William K. McVisk, of Tressler LLP, of Chicago, for appellee. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case presents the issue of whether an insurance company has a duty to defend under a claims-made-and-reported insurance policy when the insured made the claim outside the reporting period and after the cancellation of the policy. Plaintiffs, Southwest Disabilities Services and Support (Southwest), Reuben Goodwin, and Kimberly Goodwin, sought a declaratory judgment against defendant, ProAssurance Specialty Insurance Company, Inc. (ProAssurance), for coverage regarding an underlying personal injury lawsuit. ProAssurance moved for judgment on the pleadings, and plaintiffs filed a cross-motion for judgment on the pleadings. The circuit court granted ProAssurance's motion and denied plaintiffs' motion. We affirm.

¶ 2                                          BACKGROUND

¶ 3    Southwest, formerly an Illinois not-for-profit corporation, operated as a community integrated living arrangement for developmentally disabled adults. Reuben Goodwin served as the executive director of Southwest and Kimberly Goodwin served as an employee.

¶ 4    The underlying complaint, filed on February 24, 2014, and captioned Moran v. Southwest Disability Services & Support, NFP, No. 2014 L 01819 (Cir. Ct. Cook County), alleged Randy Lebron suffered injuries while residing at one of Southwest's facilities. The complaint alleged three counts of negligence for failure to supervise Lebron, the underlying plaintiff's son. The complaint alleged that on November 25, 2012, at 5 p.m., Lebron was observed to have choked on a piece of food. At 11 p.m., Lebron was observed to be drooling and have labored breathing. He was transferred to the hospital the next day, where the medical staff found a large foreign body lodged in his pharynx and diagnosed him with acute respiratory failure. In addition to the negligence claims, the complaint alleged Southwest failed to respond to requests for health care records under section 8-2001 of the Code of Civil Procedure (Code) (735 ILCS 5/8-2001 (West 2012)).

¶ 5    ProAssurance issued a social services entity liability policy to Southwest for the policy period beginning September 26, 2012, and ending September 26, 2013, with a retroactive date of September 26, 2012. Subject to the applicable limit of liability, the claims-made policy provided coverage for "damages because of bodily injury or property damage which (i) occurs on or after the retroactive date and before the end of the policy period, (ii) is caused by an occurrence, and (iii) is first reported during the policy period or any extended reporting period which may apply." The policy defined "reported" as:

> "[T]he receipt by our Claims Department, from an insured or its representative, of written notice of a claim or suit which has been made or filed, or which an insured reasonably expects to be made or filed, under any Coverage Part providing coverage on a claims-made basis, specifying (1) the date, time, and place of the professional incident, occurrence, or medical payment to which this insurance applies, (2) a description of the professional incident, occurrence, or medical payment to which this insurance applies, (3) the name, address, and age of the patient or claimant, (4) the names of witnesses, including treating physicians, and (5) the circumstances resulting in the professional incident, occurrence, or medical payment to which this insurance applies."

¶ 6        The policy stated that when an insured "becomes aware of any claim or suit to which this policy applies, or any incident which is likely to result in such a claim or suit, such insured or his or her representative must report such incident, claim or suit as soon as practicable." No reporting endorsement extending the coverage period was available under the policy, which also stated that "[t]he coverage provided herein shall terminate at the end of the policy period." ProAssurance provided Southwest with a cancellation endorsement effective on May 26, 2013, for nonpayment of the premium.

¶ 7        Southwest first reported the incident alleged in the Moran complaint when it submitted a claims form to ProAssurance on March 17, 2014, more than nine months after the cancellation of the policy. Southwest attached a copy of the Moran complaint to the claims form. ProAssurance informed Southwest in a letter dated March 20, 2016, that, because the Moran lawsuit "was reported to us after the policy period had expired, there is no coverage for this matter."

¶ 8        On August 23, 2016, plaintiffs filed their complaint for declaratory judgment against ProAssurance seeking a declaration that ProAssurance breached its duty to defend the Moran lawsuit and was estopped from asserting any coverage defenses. ProAssurance filed its answer and counterclaim for declaratory judgment seeking a finding that ProAssurance was not obligated to defend or indemnify plaintiffs in the Moran lawsuit.

¶ 9        On February 7, 2017, ProAssurance moved for judgment on the pleadings under section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2016)). Plaintiffs responded and filed a cross-motion for judgment on the pleadings.

¶ 10        On May 24, 2017, after full briefing and a hearing on the parties' cross-motions, the circuit court granted judgment in favor of ProAssurance and against plaintiffs, finding that ProAssurance was not obligated to defend or indemnify plaintiffs. This appeal followed.

¶ 11                                              ANALYSIS

¶ 12        Plaintiffs argue the circuit court erred when it granted ProAssurance's motion for judgment on the pleadings and denied their cross-motion because ProAssurance failed to defend the Moran lawsuit under a reservation of rights or file a declaratory judgment action. Plaintiffs contend that the duty to defend is broader than the duty to indemnify and that, when the allegations of the Moran complaint are compared to the insuring provision of the ProAssurance policy, the duty to defend was triggered when ProAssurance received notice that an "occurrence" happened within the policy period. Finally, plaintiffs argue the policy was ambiguous because it referred to "occurrence" and, therefore, was subject to a reasonable interpretation that the policy covered certain occurrences under its insuring provision.

¶ 13        Under the Code, "[a]ny party may seasonably move for judgment on the pleadings." *Id.* "The purpose of a motion for judgment on the pleadings is to test the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by its complaint." *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340, 346 (1999). Alternatively, the purpose of the motion is to determine whether the defendant's answer has provided a defense that would entitle him to a hearing on the merits. *Id.*

¶ 14        A court properly enters a judgment on the pleadings when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *H&M Commercial*

*Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 56 (2004). "Only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered." *Id.* at 56-57. "Moreover all well-pleaded facts and all reasonable inferences from those facts are taken as true." *Id.* at 57. "On appeal, the reviewing court must determine whether any issues of material fact exist and, if not, whether the movant was, in fact, entitled to judgment as a matter of law." *Id.* We review the entry of a judgment on the pleadings *de novo*. *Id.*

¶ 15     Plaintiffs argue the circuit court should have denied ProAssurance's motion for judgment on the pleadings because it failed to defend under a reservation of rights or file a timely declaratory judgment action to determine coverage issues. Essentially, plaintiffs seek to invoke the "estoppel doctrine" set forth in *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-54 (1999). "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Id.* at 150. Rather, the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *Id.* "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* at 150-51. However, "[a]pplication of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered." *Id.* at 151.

¶ 16     In this case, the insuring agreement in the policy triggered coverage only if the occurrence was "first reported during the policy period." Southwest reported the incident at issue in March 2014, nine months after the cancellation of the policy. In other words, the incident was not "first reported during the policy period" as required by the insuring agreement. ProAssurance's duty to defend was never properly triggered, and therefore, the estoppel doctrine does not apply here. See *id.* (application of the estoppel doctrine is not appropriate "where there was no insurance policy in existence").

¶ 17     Plaintiffs improperly attempt to conflate a "late-notice defense" normally associated with occurrence policies with the coverage triggering requirements for a claims-made policy. Unlike *Ehlco*, ProAssurance did not rely on a breach of notice condition. Instead, ProAssurance relied upon Southwest to fulfill its reporting duties to trigger coverage.

¶ 18     "Claims-made and occurrence-based insurance policies insure different risks." *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 715 (2010). In an occurrence policy, the risk is the occurrence itself. *Id.* In a claims-made policy, the risk insured is the claim brought by a third party against an insured. *Id.* "The purpose of a claims-made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums with greater certainty." *Id.* "A 'claims made and reported' policy requires not only that the claim be first made during the policy period, but also that it be reported to the insurer during the policy period." *Id.* In contrast, " '[c]onventional liability insurance policies are "occurrence" policies; they insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured.' " *Id.* (quoting *National Union Fire Insurance Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993)). Due to the indefinite future liability to which an occurrence policy can expose the insurance company,

insurers instead offer "claims made" policies which cost less, but also provide less coverage. *Id.* Here, Southwest neither made the claim nor reported it to ProAssurance during the policy period as required by the insuring agreement.

¶ 19    While plaintiffs correctly note that the duty to defend is broader than the duty to indemnify, the duty to defend analysis is not applicable here because Southwest failed to trigger coverage by not reporting the Moran lawsuit during the policy period. Illinois law is clear that "the burden is on the insured to prove that its claim falls within the coverage of an insurance policy." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). The insured must establish that its claim falls within the insuring agreement. *Reedy Industries, Inc. v. Hartford Insurance Co. of Illinois*, 306 Ill. App. 3d 989, 994 (1999).

¶ 20    Here, the ProAssurance policy required Southwest to provide within the policy period "written notice of a claim or suit which has been made or filed, *or which an insured reasonably expects to be made or filed*." (Emphasis added.) Indeed, Southwest could have reported the potential claim before the policy was cancelled on May 26, 2013, or procured a reporting endorsement, which would have provided an extended reporting period, but chose not to do so. The cancellation meant that the policy was no longer in existence at the time Southwest submitted its claim on March 17, 2014. As the policy had already expired when the claim was first reported, we find Southwest failed to trigger coverage for the Moran lawsuit under the insuring agreement of the policy. Further, *Uhlich*, upon which plaintiffs also rely, is likewise inapplicable because the insureds in that case first made their claims during the period when concurrent policies were still in effect. *Uhlich*, 398 Ill. App. 3d at 717, 721.

¶ 21    Plaintiffs also argue that the ProAssurance policy was ambiguous because it refers to "occurrence" and, therefore, is subject to a reasonable interpretation that the policy was an occurrence policy instead of a claims-made policy. In construing an insurance policy, the court determines the intent of the parties to the contract by construing the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). Where the words in the policy are clear and unambiguous, "a court must afford them their plain, ordinary, and popular meaning." (Emphasis omitted.) *Id.* However, if the words in the policy are susceptible to more than one reasonable interpretation, they will be considered ambiguous and will be strictly construed in favor of the insured and against the insurer that drafted the policy. *Id.* at 108-09. Nonetheless, courts will not strain to find an ambiguity where none exists. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law ***." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002).

¶ 22    The term, "occurrence," is included in the insuring agreement and defined in the policy. However, the first page of the policy, labeled "Social Services Entity Liability Policy Information Page," states in bold, capitalized lettering, "*THIS POLICY CONTAINS COVERAGES WRITTEN ON A 'MODIFIED CLAIMS-MADE' BASIS*." The policy makes reference to the claims-made basis throughout the policy. For example, the definition of "reported" requires the insured to submit written notice of a claim or suit which has been made or filed "under any Coverage Part *providing coverage on a claims-made basis*."

(Emphasis added.) Additionally, a large, bold heading above the insuring agreement states "GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE FORM)."

¶ 23 In this case, plaintiffs have not explained how the simple mention of the term, "occurrence," within the policy creates an ambiguity as to whether the ProAssurance policy was occurrence-based rather than claims-made based. We will not " 'torture ordinary words until they confess to ambiguity.' " *Hobbs*, 214 Ill. 2d at 31 (quoting *Western States Insurance Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999)). We find the language of the ProAssurance policy is not susceptible to more than one reasonable interpretation. The policy's insuring agreement required Southwest to report a claim within the policy period to trigger coverage.

¶ 24                                        CONCLUSION

¶ 25 The circuit court properly granted ProAssurance's motion for judgment on the pleadings and denied plaintiff's motion for judgment on the pleadings. We affirm the judgment of the circuit court of Cook County.

¶ 26 Affirmed.