2025 IL App (1st) 231084-U

SIXTH DIVISION
January 24, 2025

No. 1-23-1084

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| KATHERINE SHAW BETHEA HOSPITAL, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 20 CH 2816 |
| NAUTILUS INSURANCE COMPANY, AMBER BLANKENSHIP, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GIANNA ANKNEY, JOHN ANKNEY, WILLIAM GORSKI, and DEBRA GORSKI, | ) ) ) ) ) ) ) | |
| | ) | Honorable |
| Defendants-Appellees. | ) ) | Anna M. Loftus, Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    ***Held:***    We affirm the circuit court's entry of summary judgment where the appellee insurance carrier appropriately denied coverage of claims against the appellant

insured because appellant reported the claims to appellee outside of the contractually mandated reporting period.

¶ 2    In this insurance coverage dispute, appellant Katherine Shaw Bethea Hospital (KSB) appeals from the circuit court's entry of summary judgment in a declaratory judgment matter brought against KSB by its former insurance carrier, appellee Nautilus Insurance Company (Nautilus). The issue arose when Nautilus denied coverage of two claims against KSB, which KSB contended was improper per the terms of an insurance policy KSB had with Nautilus (the Policy). The parties each sought a declaratory judgment regarding whether Nautilus owed coverage for the claims, which the court ultimately resolved by granting summary judgment in Nautilus' favor. On appeal, KSB argues this finding was erroneous because, per the terms of the Policy, KSB complied with the applicable reporting requirements. We affirm.

¶ 3                                  BACKGROUND

¶ 4    The Policy had effective dates of March 2, 2016, to March 2, 2017. In relevant part, the Policy required Nautilus to legally defend KSB against "medical professional injury" suits and claims brought once KSB spent a threshold amount defending itself.[1] The operative portions related to this appeal read as follows:

Section I.A.2.: "This coverage applies to 'medical professional injury' only if: ***

(c) A 'claim' or 'suit' with respect to the 'medical professional injury' is first made against the insured and reported to us in writing, in accordance with [section I.A.4] below, during the policy period or an extended reporting period we provide with accordance with [Section V—Extended Reporting Period]."[2]

---

[1] There is no dispute the lawsuits at issue qualify as "medical professional injury" suits.
[2] Section V permitted KSB to report claims after the Policy's expiration for an additional charge. The additional coverage only applied if claims or suits were "first made and reported to us in writing during the extended reporting period."

Section I.A.4:

"A 'claim' or 'suit' shall be considered to be first made at the earlier of the following times:

      a.   When notice of such 'claim' or 'suit' is received by any insured.

      b.   When you knew about or should reasonably have known a circumstance was likely to result in a 'claim' or 'suit.'

      c.   When a 'claim' or 'suit' is reported in writing directly to us or one of our agents.

A 'claim' or 'suit' received by the insured and reported to us in writing within 30 days after the end of the policy period will be deemed to have been reported on the last day of the policy period.

You must report the 'claim,' 'suit,' or 'medical incident' in accordance with the terms and conditions of Section IX.A.—Notice of Claim or Suit."

Section IX.A.:

"Notice of Claim or Suit: As a condition precedent to the right to the protection afforded by this insurance, the insured shall, as soon as practicable, give the Company written notice of any 'claim,' 'suit' or 'medical incident' made against the insured."

¶ 5    The Policy contained an amendment called the Self-Insured Retention Endorsement (SIR-E). In relevant part, the SIR-E reads:

"Section [IX.A] is deleted in its entirety and replaced with the following:

a. The Insured must notify the Company in writing upon exhaustion of 25% of the self-insured retention, either by payments or reserves, or a 'claim' in which we are named as a defendant."

The Policy set the self-insured retention amount for each medical incident at $250,000.

¶ 6     The Policy's "Declarations Page" reads, "This is a claims made and reported policy." Two pages later, the following language appears immediately before section I: "This is a claims made and reported policy. This policy is limited to claims that are first made against an insured and reported to the company in writing during the policy period or during the extended reporting period, if applicable." Additionally, both sections I.A.5 and III.C.2 state: "Only the policy in effect when the first such related 'claim' or 'suit' is made and reported to us in writing will apply."

¶ 7     On March 6, 2020, KSB filed their initial complaint against Nautilus, seeking a declaratory judgment that Nautilus owed coverage in two lawsuits: (1) Amber Blankenship, individually and as Administrator of the Estate of Gianna Ankney, et al. v. KSB, et al. (case No. 2016 L 266), and (2) William and Debra Gorski v. KSB, et al. (case No. 2017 L 4) (hereinafter "Ankney" and "Gorski"). KSB twice amended its filing, and the circuit court ultimately granted in part and denied in part Nautilus' motion to dismiss KSB's second amended complaint.

¶ 8     On March 9, 2022, KSB filed its third amended complaint, the operative complaint for this appeal. Therein, KSB alleged that Nautilus denied coverage in both the Ankney and Gorski cases improperly and in bad faith. In support, KSB alleged that the SIR-E "eliminated" the requirement that KSB report a claim to Nautilus during the policy period. Instead, KSB claimed, all that was required to trigger coverage was that the underlying incident occur during the policy period, and KSB provide notice to Nautilus "upon exhaustion of 25% of the $250,000 self-insured retention." KSB alleged it complied with this requirement.

¶ 9     On the Ankney suit, KSB alleged it was served on October 20, 2016, and reported the suit to Nautilus on December 8, 2017. Nautilus denied coverage on March 8, 2018, citing that KSB failed to report the suit within 30 days of the Policy's March 2, 2017 expiration date.

¶ 10    On the Gorski suit, KSB alleged it was served on February 3, 2017. KSB did not specifically allege when it provided notice to Nautilus, but relayed that Nautilus maintains it did not receive notice until June 2017, and then denied coverage on June 12, 2017, again because KSB reported the case more than 30 days after the Policy's end date.

¶ 11    KSB brought five counts: count I for a declaratory judgment that Nautilus owed coverage on both suits; count II for bad faith for Nautilus' denial of coverage; count III for bad faith for interfering with the underlying cases[3]; count IV for consumer fraud; and count V for a declaratory judgment under a waiver/estoppel theory.

¶ 12    Nautilus filed a "Counter-Complaint," seeking a declaratory judgment that they did not owe KSB coverage for the Ankney or Gorski suits. Therein, it contended the Policy was a "claims made and reported" policy, and KSB failed to timely report either.

¶ 13    On December 9, 2022, KSB moved for partial summary judgment, reiterating that the SIR-E altered the reporting requirement such that KSB only had to report claims made during the policy period to Nautilus when the 25% threshold was met, meaning Nautilus improperly denied coverage in both suits because KSB reported before it reached that threshold in each case. Specifically, KSB filed affidavits that represented it spent $35,875.83 in the Ankney case at the time of reporting, and $0 in the Gorski case.

---

[3] Counts III and V were previously dismissed by the court, and re-plead for preservation only.

¶ 14    In support, KSB cited the legal principle that if contract language conflicts with an endorsement, the endorsement controls. It argued the SIR-E "did not include any specified time, such as number of days, weeks or months for reporting a claim nor did it tie reporting to expiration of the policy period." The SIR-E controlled over any other contract language regarding a reporting period because, "Requiring a claim to be reported during the policy period (or within 30 days thereafter) but also mandating reporting a claim only after exhaustion of a percentage of the [self-insured retention], cannot be reconciled." It also contended, alternatively, that if the circuit court deemed the Policy terms ambiguous, this ambiguity must be resolved in its favor.

¶ 15    Nautilus also filed a motion for partial summary judgment, similarly reiterating its position on the function of the SIR-E. Specifically, Nautilus argued that as the Policy was initially written, before the SIR-E was added to it, "Nautilus had the duty to defend and KSB was required to: (1) report a claim made during the policy period, in writing, within 30 days after the end of the policy; and (2) provide written notice of the claim to Nautilus 'as soon as practicable.' " After the SIR-E, however, to trigger Nautilus' coverage obligations, KSB had "to: (1) report a claim made during the policy period, in writing, within 30 days after the end of the policy; and (2) provide written notice to Nautilus once it exhausts 25% of its [self-insured retention] with respect to any single claim."

¶ 16    On April 13, 2023, the circuit court granted Nautilus' motion for partial summary judgment following argument on the motions. During the proceedings, the court explained that it found the Policy was a "claims made and reported" policy. It highlighted the Policy's requirement, per sections I.A.2(c) and I.A.4, that KSB's reporting duty had to be carried out "in accordance with" section IX.A. The court continued that "in accordance" is defined as "in a way that agreed with or follows," meaning the SIR-E simply provided an additional requirement to those in sections

I.A.2(c) and I.A.4. It explained that the SIR-E replacing section IX.A "does not mean that the insured no longer has to report the claim made during the policy period to the insurer within the policy period. It means that there is no longer a requirement to provide the notice as soon as practicable within the policy period." The court also highlighted that, "there is nothing in the [SIR-E] itself that removes the language of the [P]olicy confirming it as a claims made and reported policy." Instead, the SIR-E changes the focus from notice when practicable to notice when KSB is nearing the threshold spending amount so Nautilus "can start paying attention, given its duty to defend may soon be triggered." The court denied the language at issue was ambiguous. Finally, the court stated that KSB's interpretation was unreasonable because it would require the court to "ignore the language" regarding the "claims made and reported nature" of the Policy.

¶ 17    That same day, the circuit court entered an order that: (1) denied KSB's motion for partial summary judgment; (2) granted Nautilus' motion for partial summary judgment; and (3) found counts I and II of KSB's third amended complaint were thus rendered moot, leaving only count IV. On May 16, 2023, the circuit court entered an order granting KSB's oral motion to voluntarily dismiss count IV, and this appeal followed.

¶ 18                                  JURISDICTION

¶ 19    The circuit court entered its order resolving all pending matters in the litigation on May 16, 2023, and KSB filed its notice of appeal on June 15, 2023. Accordingly, this court has jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 20                                   ANALYSIS

¶ 21    On appeal, KSB claims that the circuit court misinterpreted the Policy to require reporting within 30 days of expiration because the SIR-E eliminated this requirement and only required that

7

(1) a claim be made within the policy period and (2) KSB report the claim to Nautilus before it spent 25% of the self-insured retention, or $62,500.

¶ 22   The circuit court granted summary judgment in favor of Nautilus based on its interpretation of the Policy, meaning this matter presents an issue of contractual interpretation for this court, which we conduct *de novo*. See *Kuhn v. Owners Insurance Co.*, 2024 IL 129895, ¶¶ 14-15. When interpreting a contract, a court's role is to give effect to the parties' intent, as expressed by the language of the contract. *Id.* When the contract's language is clear and unambiguous, the court must apply that language as written. *Id.* "[A] contract must be construed as a whole, viewing each part in light of the others. *** The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). The court will give effect to the entirety of a contract if possible. *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 51. A contract's headings will not be interpreted to "modify the coverage provided by the actual textual language appearing in the policy." See *Pekin Insurance Co. v. Tovar Snow Professionals, Inc.*, 2012 IL App (1st) 111136, ¶ 14. In an insurance policy context, a court will construe any ambiguity in the contractual language in favor of the insured. *Acuity v. M/I Homes of Chicago, LLC*, 2023 IL 129087, ¶ 31.

¶ 23   An "endorsement" to an insurance policy is an amendment to an existing policy and does not constitute a separate agreement. *Alshwaiyat v. American Services Insurance Co.*, 2013 IL App (1st) 123222, ¶ 33. When language in the body of a contract conflicts with language in an endorsement, the endorsement controls. *Pekin Insurance Co. v. Recurrent Training Center, Inc.*, 409 Ill. App. 3d 114, 118 (2011).

¶ 24   Two common types of policies in this field of insurance are described as "claims made" or "claims made and reported" policies. *Southwest Disabilities Service and Support v. ProAssurance*

*Specialty Insurance Co.*, 2018 IL App (1st) 171670, ¶ 18. A "claims made" policy only requires that the incident occur during the policy period. *Id.* A "claims made and reported" policy, however, requires "not only that the claim be first made during the policy period, but also that it be reported to the insurer during the policy period." *Id.*

¶ 25    There is no dispute that KSB did not report either the Ankney or Gorski cases within 30 days of the conclusion of the Policy and did not purchase a reporting period extension. The parties also agree that KSB reported each case to Nautilus before it spent $62,500 on either. Accordingly, the core issue before this court is whether the SIR-E altered the Policy to eliminate the reporting requirement described in section I.A.2(c) and I.A.4, leaving only the requirement that KSB give notice to Nautilus upon spending $62,500 on defense of a claim, provided that claim was made during the policy period.

¶ 26    We find that the plain language of the Policy, including the SIR-E, is clear and unambiguous that the reporting requirement contained in section I.A.2(c) and I.A.4 maintained after the SIR-E modified the Policy, and therefore Nautilus was within its rights to decline coverage for both suits. The express language of the SIR-E, in relevant part, eliminated section IX.A, and along with it, the requirement that KSB provide notice of claims "as soon as practicable." At that point, per the SIR-E, KSB had no obligation to provide notice of a claim as soon as practicable, and instead had to provide notice before it spent $62,500 on defending the claim. The SIR-E did not, however, purport to affect section I.A.2(c) and I.A.4 at all, meaning the requirement that KSB report claims before 30 days after the Policy's expiration date survived the SIR-E intact.

¶ 27    There is no conflict between applying the 30-day reporting requirement and the SIR-E's $62,500 notice requirement. They are simply separate requirements. Nor do I.A.2(c)'s and I.A.4's requirements that each provision be applied "in accordance" with the SIR-E create any conflict.

9

Instead, all three sections operate in combination to detail the requirements for KSB to trigger coverage from Nautilus: (1) KSB had to report a claim made during the policy period within 30 days of the end of the policy period, and (2) in the event KSB's expenditure would exceed $62,500 before that 30-day date, it had to report the claim before it reached that threshold.

¶ 28    In so finding, we are guided by the principle that a court must consider a contract in its entirety when determining the intent of any particular passage. *Gallagher*, 226 Ill. 2d at 233. If we adopted KSB's position, large portions of the Policy—sections the SIR-E does not purport to alter—would be rendered superfluous. Most glaringly, section V regarding extended reporting periods would be meaningless if the SIR-E removed the 30-day reporting requirement. Additionally, the language included in the Policy specifically declaring it a "claims made and reported" policy would be negated under KSB's interpretation. This language appears throughout the Policy, including on the Declarations page, before section I, and in sections I.A.5 and III.C.2.

¶ 29    We acknowledge that certain of these passages appear outside of a specific Policy section, but this is not an instance where headings or section titles of a contract conflict with a policy's substantive coverage descriptions such that the language should be disregarded. See *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 19; *Tovar*, 2012 IL App (1st) 111136, ¶ 14. Instead, the language describing the Policy as a "claims made and reported policy" is consistent with the coverage described elsewhere in the Policy, including the SIR-E, meaning it can and should be considered as illustrative of the parties' intent. *Wood*, 2021 IL App (1st) 200687, ¶ 51.[4]

---

[4] Because we find that the 30-day reporting requirement maintained, and there is no factual dispute that KSB did not meet it, we affirm the circuit court's order in its entirety on this basis alone. Accordingly, we do not reach the issue discussed in the parties' briefing on whether KSB also violated a separate provision in the SIR-E concerning notice of serious medical incidents.

¶ 30    In support of its position, KSB first claims that the parties' intent for the SIR-E to replace the reporting requirement in its entirety should be inferred because the Policy provides "excess" coverage, in that Nautilus' requirements are only triggered after KSB spends a threshold amount. KSB continues that, in the context of excess policies, general reporting requirements within certain date ranges are less common than a spending threshold notice requirement, and the parties likely intended for the SIR-E to bring the Policy in line with this, citing *Essex Insurance Co. v. Village of Oak Lawn*, 189 F. Supp. 3d 779 (N.D. Ill. 2016). This argument fails because the SIR-E does not purport to fundamentally alter the Policy's reporting/notice apparatus. The SIR-E only overrides distinct, enumerated sections of the Policy. Crucially, it does not alter the reporting requirement described in I.A.2(c) and I.A.4, or the language labeling the Policy a "claims made and reported" policy, and we must apply the SIR-E as written and in the context of the Policy as a whole. *Gallagher*, 226 Ill. 2d at 233; *Wood*, 2021 IL App (1st) 200687, ¶ 51. If the parties intended for the SIR-E to replace the reporting/notice apparatus to align the Policy with how KSB alleges excess policies typically operate, they had to express this intent in the actual language of the SIR-E. They did not.

¶ 31    KSB also argues that the intent to not impose a time-limit on reporting is clear from the lack of a specific number of days listed in the SIR-E, contending that when a specific time period is at issue in the Policy, that period is delineated. The problem with this argument is that the Policy *does* reference a specific timeframe for reporting claims—the 30-day end-of-policy expiration period. The SIR-E did not alter this language, and thus must be read and interpreted in conjunction with it. *Wood*, 2021 IL App (1st) 200687, ¶ 51.

¶ 32    KSB next contends that the SIR-E cannot be reconciled with the 30-day reporting requirement, and thus, per Illinois law, we must only apply the SIR-E because when a conflict

11

exists between an endorsement and pre-existing contract, and the endorsement controls. See *Recurrent*, 409 Ill. App. 3d at 118. As explained above, this is inaccurate; the SIR-E is not in conflict with the other provisions of the Policy, and only imposes an *additional* requirement for reporting.

¶ 33    We also reject KSB's citation to *Panfil v. Nautilus Insurance Co.*, 799 F.3d 716 (7th Cir. 2015), as dictating our result here. There, the court found the policy at issue was subject to multiple reasonable interpretations, one of which meant that Nautilus improperly denied coverage. *Id.* at 720. In ruling against Nautilus, the *Panfil* court relied on the principle that when multiple interpretations of an insurance policy are possible, a court must interpret the policy in favor of the insured. *Id.* at 720-22. The Policy, conversely, is *not* subject to multiple reasonable interpretations, and contains no ambiguities—the only reasonable interpretation is that the SIR-E did not remove the reporting requirement, and thus Nautilus was within its rights to deny coverage.

¶ 34    Finally, KSB argues that during the litigation, Nautilus contended there was at least a *bona fide* coverage dispute in denying it acted in bad faith, which amounts to an acknowledgement that the Policy's language was ambiguous. We disagree. Nautilus only argued this position in the alternative and did not waiver from its primary stance that its denial was proper based on the clear and unambiguous language of the Policy.

¶ 35                                    CONCLUSION

¶ 36    The SIR-E did not remove KSB's requirement to report claims within 30 days of March 2, 2017. KSB did not report either the Ankney suit or the Gorski suit within this timeframe, and thus Nautilus' denial of coverage was permissible pursuant to the Policy. We affirm.

¶ 37    Affirmed.